liGRISBAUM, Judge.
Defendants appeal the trial court’s judgment finding them hable for injuries plaintiff suffered when she was attacked by a police dog.

ISSUE

Whether the actions of a police officer in searching an apparent place of business (where a burglary is suspected) during the early hours of the morning with a police dog were negligent so as to render him hable for the injuries sustained by a person in the building who was attacked by the pohce dog.

FACTS

During the early morning hours of September 5, 1990, Deputy Edward Himel, Jr. was on routine patrol on Metairie Road when he observed the door to |2a building was open. He suspected a burglary and called for backup. Deputy Edward Long arrived at the scene with his K-9 unit, Flex, and proceeded to inspect the premises with Flex.
After a search of the first floor yielded no result, Deputy Long and Flex continued to the second floor. Unaware of plaintiffs presence on the second floor, Deputy Long unleashed Flex. Flex subsequently apprehended plaintiff, who was sleeping, by biting her leg.
On June 10, 1991, plaintiff filed suit for damages suffered as a result of her injury against Deputy Himel, Deputy Long and Harry Lee, individually, and as Sheriff of the Parish of Jefferson. A three day trial took place in February 1993 with a resulting judgment finding defendants liable for a total of $170,989.97.[1] It is from this judgment defendants appeal. Plaintiff also answered the appeal seeking an increase in damages.

ANALYSIS

To support a finding of negligence, plaintiff must prove (1) defendants’ conduct was a substantial factor in bringing about her harm, (2) defendants owed a duty, (3) defendants breached their duty, and (4) the risk and harm caused was within the scope of protection afforded by the duty that was breached. Roberts v. Benoit, 605 So.2d 1032 (La.1991).
We now turn to determine whether plaintiff met her burden of proof. Whether a duty is owed is a legal question. A police officer has a duty to perform his function with due regard for the safety of all citizens who will be affected by his actions. His authority must at all times be exercised in a reasonable fashion Rand he must act as a reasonably prudent man under the circumstances. Justin v. City of New Orleans, 499 So.2d 629 (La.App. 4 Cir.1986), writ denied, 501 So.2d 232 (La.1987).
Whether defendants breached this duty is a question of fact. Nothing in the record suggests the officers were unreasonable in their conduct. Deputy Himel stopped to investigate 3234 Metairie Road because he noticed the door was open. Upon closer inspection, he saw “[t]he hasp was broken off from the casing of the door... .pieces of wood from the casing [were] on the ground ... in addition to a couple of screws ... on the ground right underneath the casing.” He also noticed a 2" x 4" piece of wood in the middle of the doorway, which appeared to have been used to pry or force the door open. Furthermore, Deputy Himel saw a small TV with the cord wrapped around it at the bottom of the stairs on the first floor. These things together caused Deputy Himel to suspect a burglary.
*1388 Deputy Long arrived at the scene shortly thereafter with his K-9 unit, Flex, and proceeded to inspect the premises under the belief a crime was being committed or had been committed, because the door was broken and open and the business was closed. Upon entering the first floor building with Flex on a leash, Deputy Long testified the place had the appearance of a business in that there were cans, paints and ladders around the room. Deputy Himel stated he never knew the area to be a place people lived because it was commercial in that it was composed of small business shops.
Prior to unleashing Flex, Deputy Long called out his standard warning, “ ‘Jefferson Parish Sheriffs Office, come out or a K-9 dog will be used.’ ” Flex did not find anything or anyone, and Deputy Long put him back on his leash and proceeded to the second floor. At the top of the stairs, Deputy Long noticed a desk scattered with papers, which indicated to him that he was still searching a business. Deputy Long called out his warning again, prior to releasing Flex. Flex |4then apprehended plaintiff by biting her leg. Thereafter, it was determined plaintiff had been visiting the owner of the business, John Lapouble, when she fell asleep on the second floor. It was also determined it was plaintiff who had left the door of the business open, which caused Deputy Himel to stop and inspect the building in the first place.
During the entire search process, Deputy Long was no more than 10-15 feet behind Flex when Flex was not on his leash. Long-testified that if a place is inhabited, the dog is kept on his leash during the search. John Lapouble, the owner of the business, testified he occasionally stayed overnight at his business. However, we do not find any indication that the police officers should have known the building was inhabited. The building was located in a known commercial area and, once inside, there was still no indication the building might be inhabited after business hours.
The results of this case may have been different if the area was noticeably or readily ascertainable to be residential. However, this was not the case. Considering the circumstances, plaintiff offered no evidence to show the actions of Deputies Himel and Long were unreasonable. Plaintiff argues they should have used their lights, sirens and bullhorns to announce their presence. However, as Deputy Himel stated, the purpose is to catch the perpetrator, not scare him off. Furthermore, he was of the opinion that had the sirens been used it could have potentially made the situation worse.

CONCLUSION

We find the court was manifestly erroneous in finding defendants liable for plaintiffs injuries. The record clearly shows the actions of the officers were reasonable and, thus, could not be construed as negligent. Plaintiff never offered any alternative viable procedure that the officers could have followed, as opposed |5to the actions they took. Thus, we do not find plaintiff proved defendants breached their duty to act in a reasonable manner under the circumstances presented.
For the above reasons, the March 10,1993 judgment and the following March 15, 1993 amended judgment are hereby reversed.

REVERSED.

. Judgment was rendered March 10, 1993 and amended March 15, 1993. The amended judgment increased the amount of damages for past and future medical costs from $10,961.39 to $30,989.97. Other damages include $5,000 for residual scarring, $10,000 for post traumatic stress disorder, $125,000 for past and future pain and suffering, $3,100 for expert witness fees and costs and interests.